ATTORNEY GENERAL *v.* STATE BOARD OF AGRICULTURE.

1. MANDAMUS—ISSUES—ANSWER.
   Where, on application for a writ of mandamus, no issues are framed, the allegations of the answer will be taken as true.

2. SAME — PROPRIETY — DISCRETIONARY WRIT — DISASTROUS RE-SULT.
   The State board of agriculture will not be compelled, by a peremptory writ of mandamus, to discontinue furnishing water and sewerage to the inhabitants of a village near the agricultural college, in accordance with the terms of a contract entered into between the board and the owners of the plat upon which the village is built, irrespective of whether the contract was one which the board had a right to make or was otherwise invalid, where the answer states that, upon its attention being called to the invalidity of the contract, the board gave notice that it would discontinue the service upon a certain future date, and that to summarily cut off the service would seriously endanger the health of the community, and it appears that the college has abundance of water and sewerage and is deriving a profit from the contract.

Mandamus by John E. Bird, attorney general, to compel the State board of agriculture to discontinue the furnishing of water to private parties. Submitted February 18, 1908. (Calendar No. 22,564.) Writ denied May 26, 1908.

*John E. Bird* (*Arthur P. Hicks*, of counsel), in pro. per.

*Edward Cahill*, for respondent.

Section 11 of article 13 of the Constitution of Michigan authorizes the legislature to establish and maintain an agricultural school. The legislature, pursuant to this authority, enacted a law (Act No. 188, Laws 1861) establishing the State Agricultural College, "to afford thorough instruction in agriculture and the natural sciences con-

nected therewith." It is placed under the control of the respondent, the State board of agriculture. The purchase of about one thousand acres of land was authorized, about three miles from the city of Lansing, for that purpose, and provision made for the erection of buildings. The college has flourished and now contains a large number of students and teachers.

In September, 1899, the board of agriculture entered into a contract with certain persons, owners of a plat known as Oakwood, adjacent to the grounds of the Agricultural College, by which the respondent agreed to furnish to the owners of this plat water and sewerage, for which the residents of the plat were to pay certain specified rates. The contract, after reciting that the Agricultural College had a surplus of sewerage and water, agreed upon terms for furnishing them to the owners and inhabitants of the territory covered by the plat. The respondent reserved the right to terminate the use of the sewerage and water at any time when the supply should not be sufficient for its own use.

The secretary of the respondent, it appears from the petition, was interested in Oakwood plat, and signed the contract as an official of the respondent and also as one of the owners of the plat. The attention of the attorney general having been called to this contract, he wrote a letter to the president of the college advising him that this contract was void for two reasons: (1) The board had no lawful authority to make it; (2) that it was in violation of section 11384, 3 Comp. Laws, which reads as follows:

"No trustee, inspector, regent, superintendent, agent, officer, or member of any board having control or charge of any educational, charitable, penal, pauper, or reformatory, public institutions of this State, or of any county thereof, shall be personally directly or indirectly interested in any contract, purchase, or sale made for, or on account, or in behalf of, any such institution, and all such contracts, purchases or sales shall be held null and void; nor shall any such officer corruptly accept any bribe from any

persons interested in such contract; and it is hereby made the duty of the governor or other appointing power, upon proof satisfactory of a violation of the provisions of this section, to immediately remove the officer or employé offending as aforesaid; and upon conviction thereof before a court of competent jurisdiction, the offender shall be punished by a fine not exceeding five hundred dollars."

At a meeting held July 9 and 10, 1907, the State board of agriculture, in response to the opinion of the attorney general, determined that, as many residents had purchased and built houses relying upon the use of water and the sewerage, as provided in said contract, and that to summarily cut them off from the use thereof would endanger their health and the health of those living upon the college grounds and vicinity, said residents and other persons interested should be given a reasonable time in which to make other arrangements for water and sewerage, and that such reasonable time would be until the 1st of January, 1909. Thereupon the attorney general filed the petition in this case on October 31, 1907, for the writ of mandamus to compel the respondent to discontinue the use of the water and sewerage as provided in said contract.

The answer admits the making of the contract; states that 39 families, including some professors, have built houses, connecting them with this water and sewerage, and asserts that to now deprive them of their use would result in serious danger to the health of the inhabitants, and that the time fixed by the respondent to make other arrangements is reasonable. The respondent also maintains that the contract is valid.

GRANT, C. J. (*after stating the facts*). No issue was framed. The allegations of the answer, for the purposes of this motion, must therefore be taken as true. Besides, it is apparent that serious inconvenience and danger to health would result from a summary deprivation of the use of the water and sewers. The houses are provided

with water-closets and modern arrangements for the use of water and sewage.

We do not think that the discretionary writ of mandamus should be summarily used when its use would result so disastrously. We the more readily come to this conclusion because it appears that the State is not suffering any loss from the arrangement, the answer asserting that the State is now deriving a profit from it. We do not therefore think it essential to determine the legal questions involved. It is to be presumed that the respondent will carry out in good faith its determination to end the contract at the time proposed.

It may not be improper to say that the respondent is not by the act of the legislature expressly empowered to make such contracts. It is at least a doubtful question whether such power exists by implication. It must not be inferred that we hold that the legislature may confer such power upon the respondent. These questions are left for future determination should the occasion ever require.

For the reason above given, the writ is denied.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.